```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
FARUK RANA,                                        :
                                                   :
              Plaintiff/Counterclaim               :
              Defendant,                           :     **MEMORANDUM AND ORDER**
                                                   :
       -against-                                   :     15 Civ. 5104 (VMS)
                                                   :
BISMILLAH GYRO, INC.,                              :
                                                   :
              Defendant,                           :
                                                   :
       -against-                                   :
                                                   :
SHARMIN AHMED, personally and as managing          :
agent of Bismillah Gyro, Inc.,                     :
                                                   :
              Defendant/Counterclaim               :
                Plaintiff.                         :
------------------------------------------------------------ X
```

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Faruk Rana ("Plaintiff") brings this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq., as amended by the Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195. See generally Complaint, ECF No. 1. Plaintiff names Bismillah Gyro, Inc. ("Defendant Bismillah") and Sharmin Ahmed ("Defendant Ahmed") as Defendants (collectively "Defendants"). Id. Plaintiff seeks to recover allegedly unpaid minimum wages and overtime compensation, liquidated damages, attorneys' fees and costs. Id. Defendant Ahmed brings a counterclaim arguing, in substance, that Plaintiff owes her compensation for various items she purchased for him. See Answer, ECF No. 5.

1

Plaintiff and Defendant Ahmed are both proceeding pro se.[1] Both Plaintiff and Defendant Ahmed consented to this Court's jurisdiction over the trial of their respective claims. See Executed Consent Form, ECF No. 24. Defendant Bismillah has never been represented by counsel. As a corporation cannot appear pro se, it is in default. Defendant Bismillah also is unable to consent to this Court's jurisdiction, so the Court will analyze the claims against it in a separate Report and Recommendation.

The Court held a bench trial on October 16 and 26, 2016. See ECF Nos. 29-30. Plaintiff and Defendant Ahmed both testified. See ECF No. 29. Plaintiff called a co-worker, Parbin Bugun, as a witness, and Defendant Ahmed called as witnesses her two older daughters, Fairooz Anica and Fairha Lemisha, and a former employee of Bismillah, Sanjana Danishks Kabida. See ECF No. 30.

For the following reasons, this Court finds that Plaintiff failed to prove by a preponderance of the evidence that Defendant Bismillah is an "enterprise engaged in commerce," an element of Plaintiff's FLSA claim. See 29 U.S.C. § 203(s)(1)(A). Plaintiff's FLSA claim is therefore dismissed. The Court declines to exercise supplemental jurisdiction over both Plaintiff and Defendant Ahmed's respective state law claims.[2] See 28 U.S.C. § 1367 ("[d]istrict courts may decline to exercise supplemental jurisdiction over a claim"); Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234 (2d Cir. 2011) (the supplemental jurisdiction statute provides that a district court may decline to exercise such jurisdiction in its discretion).

---

[1] Plaintiff previously had representation, but this Court granted counsel's motion to withdraw. See Mot. to Withdraw, ECF No. 16; Order, ECF No. 19.

[2] The parties may raise their New York claims in a New York State court, as permitted by state law. See CPLR 205(a).

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 52(a) provides, in relevant part, that a court conducting a bench trial "must find the facts specially and state its conclusions of law separately," and that "[j]udgment must be entered under Rule 58." Fed.R.Civ.P. 52(a)(1). Rule 52(a) further provides that such "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed.R.Civ.P. 52(a)(6).

Part of the role of the trial court in creating a finding of fact is determining how much weight to afford any given witness's testimony, and whether or not witnesses are credible. See Krist v. Kolombos Rest., Inc., 688 F.3d 89, 95 (2d Cir. 2012) (in a bench trial, "[i]t is within the province of the district court as the trier of fact to decide whose testimony should be credited"); Newman v. Herbst, No. 09 Civ. 4313 (TLM), 2011 WL 684165, at *1 (E.D.N.Y. Feb.15, 2011) ("In any bench trial, the trial judge has to evaluate the credibility of the witnesses that testify, the witnesses' demeanor, any previous inconsistent statements by a witness, as well as the witness's explanation for any such inconsistent statements."). If a plaintiff's testimony is found to be inconsistent with corresponding facts submitted to the court or is otherwise not credible, a court must resolve the inconsistencies in favor of the defendant. See Diaz v. AJE Mgmt. Corp., No. 15 Civ. 1602 (AT) (JCF), 2017 WL 746439, at *3 (S.D.N.Y. Jan. 10, 2017), R&R adopted, No. 15 Civ. 1602 (TPG) (JCF), 2017 WL 748997 (S.D.N.Y. Feb. 23, 2017); Coulibaly v. Millennium Super Car Wash, Inc., No. 12 Civ. 04760 (CBA) (CLP), 2013 WL 6021668, at *7 (E.D.N.Y. Nov. 13, 2013).

The immediate relevant dispute for purposes of this Memorandum and Order is whether Bismillah was "an enterprise engaged in commerce." 29 U.S.C. § 203(s)(1)(A). If Plaintiff fails

to prove this fact, Plantiff's FLSA claims must be dismissed, as the FLSA does not apply. This question was addressed at several Court conferences prior to the trial. In a conference before this Court while Plaintiff was still represented by counsel, Plaintiff stated that Defendant Bismillah had made approximately $1,000 a day in revenue. Tr. 9:1-11, ECF No. 31. This would total $365,000 in gross revenues a year. When the Court asked Plaintiff's counsel how Plaintiff would reach the $500,000 revenue threshold of the FLSA, Plaintiff's counsel stated Plaintiff had previously certified that the store did $1,500 in business a day, and that an inspection of Defendant's records would reveal sufficient revenues. See id. 13:9-11. The Court allowed Plaintiff's counsel time to review Defendants' records, and the parties set a time for the performance of the inspection. See id. 16:2-16. The inspection did not occur because Plaintiff's counsel filed a motion to withdraw, which this Court granted. Plaintiff, in a different pre-trial conference, inconsistently asserted that the store did make more than $500,000 in revenue annually. Tr. 14:20-25, 15:1-6.

## II. FINDINGS OF FACT

### A. Undisputed Facts

1. Defendant Bismillah was a small restaurant located at 473 McDonald Avenue, Brooklyn, New York 11218. Tr. 18:7, ECF No. 29; Compl., ECF No. 1 ¶ 10.

2. The store closed in the second half of 2016. Tr. 57:12-24, ECF No. 29.

3. Defendant Bismillah served gyros, Indian foods, burgers and fried chicken, Tr. 18: 12-20, 74: 18-23, ECF No. 29, as well as tea and coffee during breakfast, Tr. 25:24-25, 26:1-8, ECF No. 29.

4. Plaintiff testified that gyros cost $5 each. Tr. 26:13-26, 27:1-8, Tr. 28:9-14, ECF No. 29. Defendant Ahmed, and her non-party witnesses/daughters Fairooz and Fairha confirmed that

4

a gyro costs $5 alone and $6 if it came with rice. Tr. 87:5-6, ECF No. 29; Tr. 31:13-17, 55:20-23, ECF No. 30.

5. Defendant Ahmed testified that Indian meals would cost $6 each, although sometimes Bangladeshi community members would pay a dollar or two less. Tr. 87:7-14, ECF No. 29.

6. Defendant Ahmed and her daughter Fairooz testified that fried chicken was served by the piece, for $1 per piece, and that the store would not usually sell more than 20 pieces a day. Tr. 88:1-10, ECF No. 29, Tr. 31:19-20, ECF No. 30.

7. Defendant Ahmed was the owner and primary manager of Defendant Bismillah and had control over Defendant Bismillah's operations, including over its employees. Tr. 74:6-8, ECF No. 29; Compl., ECF No. 1 ¶ 27.

8. Plaintiff worked at Defendant Bismillah from approximately January 2014 through March 2015. Tr. 18:2-3, ECF No. 29; Compl., ECF No. 1 ¶ 13.

9. Plaintiff cooked, cleaned and sometimes handled the cash register for Defendant Bismillah. Tr. 18:21-25, 20:7-13, ECF No. 29.

10. The store utilized at least one spice manufactured by the Shan brand in Pakistan. Tr. 56:16-31, 98:18-22, ECF No. 29.

As to other facts related to revenue, the witnesses offered conflicting testimony, which is described below.

### B. Plaintiff's Testimony

A significant portion of Plaintiff's testimony concerned the amount of revenue earned by Defendant Bismillah. Plaintiff testified that during breakfast, the store had approximately 20 to 30 customers who would order tea or coffee. Tr. 25:24-25, 26:1-8, ECF No. 29. Plaintiff cooked approximately 50 gyros at $6 each, Tr. 26:13-26, 27:1-8, Tr. 28:9-14, ECF No. 29, as

5

well as Indian and American food (e.g. burgers, chicken nuggets) for five to seven customers per day, Tr. 25:7-9, ECF No. 29. Plaintiff testified that dinner would have "[h]undred or worse" and "[s]ometime (sic) 100 or more" customers. Tr. 31:18-23, ECF No. 29. On busier days—Thursday through Saturday, according to Plaintiff—70 to 100 people would come for dinner. Tr. 34:15-25, ECF No. 29.

In the morning, Plaintiff typically found between $400 and $600 in the cash register collected from customers during the dinner hours. Tr. 35:10-14, ECF No. 29.

During the trial, Plaintiff repeatedly increased these estimates. He later testified that on Thursday through Saturday, the store made $1,500 per day, and that on Sunday through Wednesday the store made $800 to $1,100 per day. Tr. 36:4-11, ECF No. 29. Plaintiff then testified that Thursday through Saturday, the store did not make less than $1,700 or $1,800 per day, on Tuesday and Wednesday it made $1,300 or $1,400, but no less than $1,200; only on Monday did revenue sometimes drop below $1,000. Tr. 60:16-25, 61:1-17, ECF No. 29. Plaintiff did not provide evidence for any of his contradictory revenue estimations beyond his own testimony.

Plaintiff also testified that Defendants would occasionally cater community events, such as picnics.[3]

Plaintiff's testimony on other issues was contradictory, specifically concerning how much he was paid and when his shift began. For example, Plaintiff's Complaint suggests that he was not paid for any of his work and received no tips. See Compl. ECF No. 1 Ex. A. At one

---

[3] Although Plaintiff could not provide corroborating evidence, he testified that he believed that in one two-month period when schools were out, Defendants earned between $32,000 and $40,000 from these catering jobs. Tr. 36:20-25, 37:1-10, ECF No. 29. Plaintiff did not provide any basis for his belief that community events brought in approximately $40,000 annually.

point, Plaintiff testified that he was given $50 at irregular intervals. Tr. 41:20-23, ECF No. 29. Later, he testified Defendant Ahmed would give him varying amounts of money when he asked her for it, ranging from $200 to $500 to $1,100. Tr. 43:18-24, ECF No. 29. Plaintiff testified that he was given between $7,000 and $10,000 through the duration of his employment. Tr. 52:16-20, ECF No. 29. He also testified he received tips, although no more than $5 for a shift. Tr. 54:10-13, ECF No. 29.

Although Plaintiff's Complaint states that he consistently began work at 8:30 AM, see Compl., ECF No. 1, Ex. A, at trial he testified that he began at 8:00 AM, see Tr. 20:20-21, ECF No. 29.

### C. Defendant Ahmed's Testimony

Defendant Ahmed testified that Bismillah made far less revenue than Plaintiff claimed. She testified that Friday and Saturday were Bismillah's busiest days, and that on those days, the store made between $600 and $800 a day. Tr. 84:4-11, 85:2-16, ECF No. 29. On other days of the week, the store made $600 per day. Tr. 85:4-11, 86:1-4 ECF No. 29.

Defendant Ahmed testified that approximately 20 or 25 people would come for the lunch hour on a busy day, and during dinner, the store would take in $200. Tr. 86:3-19, ECF No. 29. She also testified consistently that 25 to 30 people would come to dinner. Tr. 86:20-25, 101:12-14, ECF No. 29. Defendant Ahmed testified that the store made only $1,200 or $1,300 on a few days when it was in operation, primarily when it first opened. Tr. 101:17-22, ECF No. 29.

Defendant Ahmed testified that she did cater events, but that those events earned Defendants only $4,000 or $5,000 in a year. Tr. 101:4-8, ECF No. 29. When catering, the store sold meals by the box, for $10 per box, and that Bismillah would usually sell 200 or 100 boxes of food sold. On rare occasions Bismillah would sell 400 boxes of food. Tr. 100:16-25.

7

Defendant Ahmed stated that Plaintiff lied in his estimates of the store's business, and she argued that the store could not have handled the number of customers that Plaintiff claimed said made purchases. Tr. 101:12-17, ECF No. 29.

### D. Parbin Bugun's Testimony

Plaintiff called Parbin Bugun, a co-worker at Defendant Bismillah, as a witness.

Bugun was primarily a chef at the store, and was unsure as to food prices. Tr. 18:7-10, ECF No. 30.

Bugun testified that she believes approximately 30 to 40 people came to Bismillah each day, Tr. 18:11-14, ECF No. 30, which is between the initial number cited by Plaintiff and the number cited by Defendant Ahmed.

Bugun was unable to say how many people came for dinner because her shift ended earlier in the day. Tr. 18:18-25, ECF No. 30.

### E. Sanjana Danishks Kabida's Testimony

Ms. Ahmed called Ms. Kabida, a former employer at Defendant Bismillah, as a witness. Ms. Kabida testified that she worked at Bismillah for part of the same period as Plaintiff. Tr. 19:15-25, ECF No. 23.

Ms. Kabida testified that she believed the store made on average $500 or $600 in revenue each day. She testified that Bismillah made $700 on especially good days and $300 on especially bad days. Tr. 24:20-25, 25:1-12, ECF No. 23.

Ms. Kabida also testified that she was always paid, and that she was paid extra when she worked over ten hours in a day. Tr. 28:21-25, 29:1-7. Ms. Kabida testified that she was sometimes paid late. Tr. 31:18-23, ECF, ECF No. 23.

### F. Fairooz Anica's and Fairha Lemisha's Testimony

Defendant Ahmed's daughters Fairooz and Fairha both offered testimony. Neither had meaningful knowledge about the number of customers or how much revenue the store made on a daily basis as their exposure to the store was limited to the hours when they were not at school. Fairha testified that on weekends, she saw approximately 10 customers in the store during the lunch hour. Tr. 58:2-6, ECF No. 23.

### G. Analysis of Testimony

The Court finds that Plaintiff's self-serving and often contradictory testimony was not credible, in contrast to the competing testimony from Defendant Ahmed and Ms. Kabida, which was credible.

Plaintiff's initial and most modest testimony regarding Defendant Bismillah's revenues, when extrapolated, suggests daily revenues of close to the $1,000 amount he stated prior to trial. If the store made on average $500 at dinner, $300 in gyro sales each day during lunch (50 gyros at $6 each), approximately $50 through sales of coffee and tea to about 25 people during breakfast,[4] that accounts for $850 in daily revenues. See supra at 5-6. Plaintiff also testified that five to seven people usually ordered Indian or American food at lunch and that the restaurant sold soft drinks. Although he did not testify as to the price of these products, those amounts would increase daily revenues to close to approximately $1,000.

Plaintiff provided three estimates of daily revenues: (1) $1,000 a day, Tr. 25:24-25, 26:1-8, 26:13-26, 27:1-8, 35:10-14, ECF No. 29; (2) $1,500 on the three busy days and $1,000 on the four slow days, Tr. 36:4-11, ECF No. 29; and (3) $1,000 only on Mondays, $1,200 or $1,300 on

---

[4] Plaintiff did not say how much Defendants charged for coffee or tea, but $2 is a generous estimate.

9

the three regular days, and $1,700 or $1,800 on the three busy days, Tr. 60:16-25, 61:1-17, ECF No. 29. Of these three estimates, only Plaintiff's final and largest estimate satisfies the FLSA's $500,000 annual revenue threshold.

In sum, before trial, Plaintiff stated that he believed the store made approximately $1,000 per day, Tr. 9:1-11, ECF No. 31, which would be a total amount below the $500,000 annual threshold. His initial testimony during trial was consistent with these prior statements. Tr. 25:24-25, 26:1-8, 26:13-26, 27:1-8, 34:15-25, 35:10-14, ECF No. 29. His description of the number of customers in a given day, what those customers would order and how much those items cost, in addition to how much money he estimated would be in the register the next morning produces a calculation of roughly $1,000 of business per day. If the store made $1,000 a day, it would only earn $400,000 annually, even when the alleged $40,000 from catering was included. If the store made $1,500 three days a week, and $1,000 on the other four days, it would earn approximately $443,219.50 annually. Adding the $40,000 Plaintiff alleges Bismillah earned from catering to Plaintiff's estimate of revenues would only total $483,219.50 annual revenue.

Throughout his testimony, though, Plaintiff repeatedly increased by significant margins his estimation of how much business the store did. The revenue on busy days went from $1,500 to no less than $1,700 or $1,800, and the revenue on slow days increased from $1,000 to between $1,300 and $1,400, with Monday being the only day revenue would drop to or below $1,000. Tr. 36:4-11, 60:16-25, 61:1-17, ECF No. 29. Plaintiff did not explain these differing amounts. Plaintiff's testimony on the issue of revenues was thus contradictory, self-serving and lacking in detail. As noted above, Plaintiff's testimony on Bismillah's revenues was not the only area where he contradicted himself.

Plaintiff's testimony was also contradicted by the relatively consistent testimony of Defendant Ahmed and Ms. Kabida.

Defendant Ahmed testified the revenues were much lower than Plaintiff stated, stating $600 per day was a normal amount, with a maximum of $800 per day on busier days. Tr. 84:4-11, 85:2-16, ECF No. 29. She did not change these estimates during her testimony.

Ms. Kabida, one of Defendant's witnesses, also testified that between $500 and $600 were normal daily revenues in her experience working at Bismillah. Tr. 24:20-25, 25:1-12, ECF No. 23.

The Court observed each witness's demeanor during the trial when each testified about the business's operations. Plaintiff appeared to be calculating as he measured his answers to the Court's questions to achieve his outcome, often pausing for significant periods before responding. At key moments, Plaintiff seemed to feign confusion. See, e.g., Tr. 35:15-25, 36:1-6, ECF No. 29. In contrast, the other witnesses, including Plaintiff's co-worker, testified without hesitation and consistently.

Plaintiff's demeanor demonstrated significant anger directed at Defendant Ahmed. There was testimony on the record to suggest a failed personal relationship between Plaintiff and Defendant Ahmed, Tr. 70:1-11, 78:4-11, 21-25, 80:24-25, ECF No. 29, which may account in part for the self-serving quality and indignant tone of some of Plaintiff's testimony. Tr. 105:3-25, 106:1-9, ECF No. 29.

Based on the above testimony and analysis, the Court also finds that:

11. Defendant Bismillah had revenues of no more than $1,000 per day for almost its entire operation.

12. Defendant Bismillah thus had less than $500,000 in annual revenues.

## III.     CONCLUSIONS OF LAW

It is well established that the plaintiff "bear[s] the burden of proof to establish all claims and damages by a preponderance of the evidence." Choudry v. Durrani, No. 14 Civ. 4562 (SIL), 2016 WL 6651319, at *5 (E.D.N.Y. Nov. 10, 2016); Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 212 (2d Cir. 2009).

In order to establish a claim under the FLSA for minimum wage or overtime compensation, a plaintiff must demonstrate that: (1) he is an "employee" of the defendant; and (2) the defendant is an "enterprise engaged in commerce" during the relevant period. See 29 U.S.C. §§ 206(a), 207(a); 29 U.S.C. § 203(s)(1)(A); Chen v. Major League Baseball, 6 F. Supp. 3d 449, 453-54 (S.D.N.Y. 2014). The FLSA delineates an enterprise as one with "employees engaged in commerce . . . [or] handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and an "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). As noted above, Plaintiff failed to prove that Defendant Bismillah earned $500,000 or more in revenues annually, as is required to establish an FLSA claim. See 29 U.S.C. § 203(s)(1)(A).[5] Plaintiff thus fails to establish an FLSA claim.

## IV.     STATE LAW CLAIMS

A court "may decline to exercise supplemental jurisdiction," if, among other things, it has already "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

The decision to exercise supplemental jurisdiction is within the sound discretion of the district court. See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 116 (2d Cir.

---

[5] Plaintiff testified and Defendant Ahmed confirmed that at least one spice used by the restaurant is manufactured in Pakistan. Tr. 56:16-31, 98:18-22, ECF No. 29. There was no other testimony to establish any other interstate commerce on the part of the business.

2013).  "Once all federal claims have been dismissed, a balance of factors will usually point toward a declination."  Id. at 118; see Bustillos v. Acad. Bus, LLC, No. 13 Civ. 565 (AJN), 2014 WL 116012, at *5 (S.D.N.Y. Jan. 13, 2014).

Plaintiff has not provided a reason for this Court to preside over his state claims, and this Court believes that a New York State Court will be as capable of adjudicating the merits of Plaintiff's NYLL claim and Defendant Ahmed's counterclaim.  See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) ("[T]he exercise of supplemental jurisdiction is left to the discretion of the district court . . . .") (citation omitted).

The Court declines to exercise supplemental jurisdiction.

## V.  CONCLUSION

For the reasons stated herein, this Court dismisses Plaintiff's FLSA claim as unsupported by credible evidence, and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and Defendant Ahmed's counterclaims, which do not provide bases for federal jurisdiction.  The Clerk of Court is requested to enter a judgment in Defendant Ahmed's favor on Plaintiff's FLSA claims and to dismiss the state law claims and counterclaims for lack of subject-matter jurisdiction.  Plaintiff's claims made against Defendant Bismillah are addressed in a separate Report and Recommendation.

Dated:  Brooklyn, New York
       April 17, 2017

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge